IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



CHARLES C. HUNTER,

    Plaintiff,

v.                                                                Civil Action No. 3:18CV153

DIRECTOR RAUF, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Charles C. Hunter, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Hunter's Particularized Complaint ("Complaint," ECF No. 18).[2] Hunter names as defendants: Director Rauf,[3] Supervisor Malike, and Supervisor Osafo. The matter is before the Court on the Motion to Dismiss filed by Supervisor Malike and Supervisor Osafo. (ECF No. 42.) Hunter has responded. (ECF Nos. 47, 52.)[4] For the

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Hunter's submissions.

[3] Defendant Director Rauf has not yet appeared in this action.

[4] Hunter initially filed a Response in Opposition ("Response") to Defendants Supervisor Malike and Supervisor Osafo's Motion to Dismiss on November 21, 2018. (ECF No. 47.) After Defendants Supervisor Malike, and Supervisor Osafo filed their Reply (ECF No. 49), Hunter filed an "Opposition to Defendants' Motion to Dismiss – Reply by Plaintiff" ("Second Response").

reasons stated below, the Motion to Dismiss (ECF No. 42) will be GRANTED IN PART and DENIED IN PART.

## I. STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In

---

(ECF No. 52.) Hunter did not seek leave of Court prior to filing his Second Response. *See* E.D. Va. Loc. Civ. R. 7(F)(1) (explaining that after a non-moving party files a brief in opposition to an opposing party's motion, and the moving party files its reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of Court"). Nevertheless, the Court will consider Hunter's Second Response in its analysis of the Motion to Dismiss.

In addition to filing his Second Response, Hunter filed numerous submissions with the Court, which consist of letters to the Court, as well as copies of various inmate request forms and other documents related to his medical treatment. To the extent that Hunter seeks to add vague new claims in his Response, Second Response, and various submissions, the Court notes that Hunter cannot add new claims by a passing reference in these filings. *See Snyder v. United States*, 263 F. App'x 778, 779–80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Accordingly, to the extent that Hunter seeks to add any new claims in his Response, Second Response, and various submissions, the new claims will receive no further consideration in this action.

considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the

inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. HUNTER'S ALLEGATIONS

In his Complaint, Hunter alleges that Defendants Supervisor Malike and Supervisor Osafo "are head or supervisor nurses," and "[t]hese two nurses report to Director Rauf." (Compl. 1.) Hunter further alleges:

> ... [Defendants] are the heads of Fairfax Detention Center['s] medical department that I know of and the only names given [to] me. Rauf, Malike, and Osafo knew I wasn't or didn't receive meds and they took no actions in getting my meds. I wrote a number of medical request forms stating my concerns for missing meds (blood thinner) which my primary care doctor stress[ed] that I shouldn't miss a day of meds. My medical request forms state[] time and time again asking what danger was I in due to missing meds. I never received an answer which cause[d] me MAJOR mental stress and many sleepless nights thinking the blood clot would break off and kill me.
>
> <u>Constitution violation</u>. My 8th Amendment under cruel and unusual punishment. A reply would have not cause[d] mental stress and sleepless nights and days worrying if the clot would break off.
>
> Since being at Fairfax Detention Center, I have misse[d] a number of days of taking meds, again with no reply from staff. Only reply I receive was – we ran out of your meds. Again days and nights with no sleep concerning whether or not the clot would break off. I explain to medical I have an extensive blood clot which I had to fight for my life for months. Malike [and] Osafo knew just how extreme my clot is. They knew a small piece already broke off and went to my lung and I was already afraid for my life. Missing five days of meds wasn't an option for me.
>
> <u>Constitution violation</u>. My 8th Amendment under cruel and unusual punishment. Knowing my mental state from missing meds before due to medical not giving me my meds. Once again I go into a state of depression.
>
> Just recently, I missed six days of meds and the staff, Malike and Osafo, on the six[th] day wanted to switch my meds without contacting my doctor or taking any tests (blood or urine) to see how or if the new meds would work for me. I explain[ed] that they should reach out to my doctor and ask [him] could I switch medication. I explain that my primary care doctor [gave] me Xarelto and to change it after a year might not be the right thing to do. Especially when you haven't taken

4

any tests. These events cause lead [sic] me to seek forensic staff (Mental Health) which said they couldn't help because I wasn't hearing voices in my head.

Constitution violation. 8th Amendment under cruel and unusual punishment. I was being force[d] to change meds which made me mentally depress[ed] and once again I had many sleepless nights praying my clot won't break off.

(*Id.* (paragraph numbers omitted).)

Additionally, Hunter alleges:

> ... [M]edical once again disregard[ed] my medical needs, I take morning meds for my (DVT) blood clot in my left leg. This is a medical fact that my meds should be taken every day around the same time, not only have I miss[ed] meds due to the medical staff, who the supervisor is at fault. Team leader (supervisor) Nurse Osafo who reports to Nurse (Sgt) Kent never informed Nurse Kent of the many issues, at least that's what Nurse Kent claims. My times are constantly altered by Nurse Osafo. I ask for a grievance form time after time in order to get help, I'm only provided request forms. I have never been provided a grievance form to address this matter. On 7-27-18, I received my meds at 4:10 p.m. after Deputy Roberts called main medical concerning my meds. Deputy Roberts was inform[ed] that due to me going to Bible study (programs) I wasn't given meds. If I want meds, I would have to cancel my Bible study class I attend [which] the jail provides. In short, I was ask[ed] to make a choice between getting meds or my faith. According to my 1st Amendment this is a violation, why should I have to choose between life and faith. Finally, I was sent to main medical and Nurse Osafo mention[ed] the same thing to me in the presence of Mr. Andrew who works in the office. Nurse Osafo was verbally abusive towards me concerning me going to programs. Regardless of my incarceration, I shouldn't have to deal with this emotional stress concerning refusal of meds and[/]or delay (seven hours) of meds. Please keep in mind I was force[d] to miss meds for six days and was pressured to change my meds after medical [had] been [giving] me the same meds for the better part of eight months. This was mention[ed] without contacting my primary care doctor which I asked them to do. . . .

Constitution violation. 8th Amendment under cruel and unusual punishment. I worry every day concerning what's the next thing medical staff will do, when I mention medical staff, the nurses are Osafo and the supervisor he reports to which is Nurse (Sgt) Kent and Director Rauf. I find it difficult to sleep due to concerns of death. I have many sleepless nights.

(ECF No. 18–3, at 1.)[5]

---

[5] When Plaintiff filed his Particularized Complaint (ECF No. 18, at 1), he included a second page to his Particularized Complaint, titled: "PARTICULARIZED[] COMPLAINT FOR CIVIL

Based on the foregoing allegations, the Court construes Hunter to raise the following claims for relief:

Claim One: Director Rauf, Supervisor Malike, and Supervisor Osafo violated Hunter's Eighth Amendment[6] rights when "they took no actions in getting [Hunter's] meds," despite knowing that he had not received his blood thinner medication. (Compl. 1.)

Claim Two: Supervisor Malike and Supervisor Osafo violated Hunter's Eighth Amendment rights when they "wanted to switch [Hunter's] meds without contacting [Hunter's] doctor or taking any tests (blood or urine) to see how or if the new meds would work for [Hunter]." (*Id.*)

Claim Three: Hunter "ask[ed] for a grievance form time after time in order to get help," and was never provided with a grievance form; he was "only provided request forms." (ECF No. 18–3, at 1.)

Claim Four: Hunter's First Amendment[7] rights were violated when "[he] was ask[ed] to make a choice between getting meds or [his] faith." (*Id.*)

Hunter demands "2 million dollars due to repeated neglect and mental stress." (Compl. 1.)

### III. ANALYSIS

#### A. Alleged Eighth Amendment Violations

To state an Eighth Amendment claim, an inmate must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained

---

ACTION NUMBER 3:18CV153 ADDITIONAL INFORMATION TO CONSIDER." (ECF No. 18–3, at 1.)

[6] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[7] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were

7

'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

### 1. Claim One

In Claim One, Hunter alleges that Director Rauf, Supervisor Malike, and Supervisor Osafo violated his Eighth Amendment rights because they knew that Hunter had not received his blood thinner medication, and "they took no actions in getting [his] meds." (Compl. 1.) Supervisor Malike and Supervisor Osafo argue that Hunter fails to state an Eighth Amendment claim against them because Hunter fails to allege "that he suffered any adverse physical effects from any delay in receiving his blood thinner medication" or "that either [Supervisor] Malike or [Supervisor] Osafo acted with deliberate indifference." (Mem. Supp. Mot. Dismiss 6–7, ECF No. 43.)

Here, the Complaint indicates that Hunter requires daily medication for his "(DVT)[8] blood clot in [his] left leg," and that "the blood clot [could] break off." (ECF No. 18–3, at 1.) Supervisor Maliko and Supervisor Osafo argue that Hunter fails to allege facts suggesting that he suffered an injury from this six-day period during which he did not receive his medication. (Mem. Supp. Mot. Dismiss 6–7.) Although Hunter's allegations lack precision, at this stage, Hunter has pled sufficient facts to plausibly suggest that his condition warranted daily medication, and that his failure to receive such medication was "sufficiently serious." (Compl. 1); *see Quinones*, 145 F.3d at 167 (quoting *Wilson*, 501 U.S. at 298); *see also Johnson v. Coleman*, 506 F. App'x 125, 126–28 (3d Cir. 2012) (discussing that the plaintiff, who had deep vein thrombosis, had "alleged a serious medical condition").

Further, although Hunter's allegations regarding the actions of each Defendant are vague, considered in the light most favorable to Hunter, the Complaint alleges sufficient facts to plausibly suggest that, despite knowing that Hunter's condition required daily blood thinner medication and that Hunter had not received such medication for a six-day period, Defendants failed to provide Hunter with his required medication. (Compl. 1.) Accordingly, Hunter's allegations plausibly suggest that "the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996) (citation omitted). At this stage, such allegations are sufficient to indicate that Defendants acted with deliberate indifference. *See id.*; (*see also* Compl. 1.) Accordingly, the Motion to Dismiss filed by Supervisor Malike and Supervisor will be DENIED with respect to Claim One.

---

[8] "Deep vein thrombosis, or DVT, is a blood clot that forms in a vein deep in the body." Deep Vein Thrombosis, https://medlineplus.gov/deepveinthrombosis.html (last visited Aug. 12, 2019).

9

### 2. Claim Two

In Claim Two, Hunter contends that Supervisor Malike and Supervisor Osafo violated his Eighth Amendment rights when they "wanted to switch [Hunter's] meds without contacting [Hunter's] doctor or taking any tests (blood or urine) to see how or if the new meds would work for [Hunter]." (Compl. 1.) Supervisor Malike and Supervisor Osafo argue that Claim Two should be dismissed because the "decision to change the type of blood thinner medication [Hunter] was taking without consulting an outside physician is simply not an 'objectively sufficiently serious' deprivation in and of itself," and Hunter "wholly fails to allege any substantial harm resulting from his medicine change." (Mem. Supp. Mot. Dismiss 8.) Supervisor Malike and Supervisor Osafo also argue that Hunter fails to allege sufficient facts to plausibly suggest that they acted with deliberate indifference when they changed Hunter's medication. (*Id.* at 8–9.)

Generally, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Nevertheless, "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Here, Hunter contends that he had been taking his preferred blood thinner medication for approximately one year, and that Supervisor Malike and Supervisor Osafo decided to change his medication "without contacting [Hunter's] doctor or taking any tests (blood or urine)." (Compl. 1.)

Despite Hunter's apparent desire to receive his preferred blood thinner medication, Hunter simply lacks entitlement to the medical care of his choosing. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Absent

exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See id.* (citation omitted). Hunter alleges no such exceptional circumstances. Instead, Hunter states nothing more than a disagreement with Supervisor Malike's and Supervisor Osafo's professional medical opinions about the appropriate course of treatment, and thus fails to state a cognizable constitutional claim, much less deliberate indifference. (*See* Compl. 1; ECF No. 18-3, at 1.) Accordingly, the Motion to Dismiss filed by Supervisor Malike and Supervisor Osafo will be GRANTED with respect to Claim Two. Claim Two will be DISMISSED WITHOUT PREJUDICE.

### B. Allegedly Inadequate Grievance Procedure

In Claim Three, Hunter contends that he "ask[ed] for a grievance form time after time in order to get help," and was never provided with a grievance form; he was "only provided request forms." (ECF No. 18-3, at 1.)

As an initial matter, Hunter fails to allege any facts suggesting that the named Defendants had any direct involvement or personal responsibility with respect to "only provid[ing] request forms," rather than grievance forms, as Hunter had requested. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Moreover, Hunter has no constitutional right to participate in grievance procedures. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Furthermore, a prison official's failure to comply with grievance procedures is not actionable under § 1983. *See, e.g., Chandler v. Cordova*, No. 1:09CV483 (LMB/TCB), 2009 WL 1491421, at *3 n.3 (E.D. Va. May 26, 2009); *Banks v. Nagle*, 3:07CV419-HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009).

Accordingly, Claim Three will be DISMISSED for failure to state a claim upon which relief may be granted and as legally frivolous.

### C. Alleged Violation of the First Amendment

In Claim Four, Hunter alleges that his First Amendment rights were violated when "[he] was ask[ed] to make a choice between getting meds or [his] faith." (ECF No. 18–3, at 1.) Specifically, Hunter contends:

> On 7-27-18, I received my meds at 4:10 p.m. after Deputy Roberts called main medical concerning my meds. Deputy Roberts was inform[ed] that due to me going to Bible study (programs) I wasn't given meds. If I want meds, I would have to cancel my Bible study class I attend [which] the jail provides. In short, I was ask[ed] to make a choice between getting meds or my faith. According to my 1st Amendment this is a violation, why should I have to choose between life and faith. . . . Regardless of my incarceration, I shouldn't have to deal with this emotional stress concerning refusal of meds and[/]or delay (seven hours) of meds.

(*Id.*)

To state a Free Exercise claim, Hunter must allege facts that suggest "(1) that he holds a sincere belief that is religious in nature" and (2) that Defendants imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10CV1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r Internal Revenue*, 490 U.S. 680, 699 (1989)). "Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (alteration in original) (some internal quotation marks omitted) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)). A mere inconvenience to the exercise of religion fails to give rise to a First Amendment violation. *McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) ("There may be inconveniences so trivial that they are most properly ignored.") Moreover, "[d]e minimis burdens on the free exercise of religion are not of constitutional dimension." *Rapier v.*

*Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (citations omitted). Second, Hunter must allege that the restriction fails to further a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

Here, Hunter fails to allege any facts regarding the sincerity of his religious beliefs. (*See* Compl. 1; ECF No. 18-3, at 1.) Furthermore, Hunter fails to allege any facts to plausibly suggest that Defendants imposed a substantial burden on his ability to practice his religion. (*See* Compl. 1; ECF No. 18-3, at 1.) Specifically, Hunter contends that on July 27, 2018, he received his medication seven hours later than he would normally receive such medication because he had attended Bible study classes. (*See* ECF No. 18-3, at 1.) Hunter wholly fails to allege any facts to plausibly suggest that Defendants placed substantial pressure on him to modify and violate his religious beliefs by changing the time at which he received his medication when he attended Bible study classes. Instead, Hunter's receipt of his medication at a different time of the day amounts to a *di minimis* burden on his free exercise of religion. *Cf. Rapier*, 172 F.3d at 1006 n.4 (citations omitted) (discussing that the plaintiff "[had] not alleged a routine or blanket practice of denying him pork-free meals," and "the unavailability of a non-pork tray for [the plaintiff] at 3 meals out of 810 does not constitute more than a de minimis burden on [the plaintiff's] free exercise of religion"). Accordingly, Claim Four will be DISMISSED WITHOUT PREJUDICE.

### IV. HUNTER'S MOTIONS

#### A. Motion to Change Venue

Hunter moves the Court to transfer this action to the Alexandria Division because after he is released from incarceration, "[he has] no way of traveling to Richmond, VA for court." (ECF No. 26, at 1.) At this time, no trial, hearing, or other court appearance has been scheduled. Thus,

Hunter's Motion to Change Venue (ECF No. 26) will be DENIED WITHOUT PREJUDICE. If a trial, hearing, or other court appearance is scheduled, Hunter may file his motion again.

### B. Motion for Appointment of Counsel

Hunter also moves the Court for the appointment of counsel. (ECF No. 27.) Counsel need not be appointed in § 1983 cases unless the case presents complex issues or exceptional circumstances. *See Fowler v. Lee*, 18 F. App'x 164, 166 (4th Cir. 2001) (citation omitted). This action presents no complex issues or exceptional circumstances. Additionally, Hunter's pleadings demonstrate that he is competent to represent himself in the action. Accordingly, Hunter's Motion for the Appointment of Counsel (ECF No. 27) will be DENIED WITHOUT PREJUDICE.

## V. CONCLUSION

The Motion to Dismiss (ECF No. 42) will be GRANTED IN PART and DENIED IN PART. Claims Two and Four will be DISMISSED WITHOUT PREJUDICE. Claim Three will be DISMISSED for failure to state a claim upon which relief may be granted and as legally frivolous. Hunter's Motion to Change Venue (ECF No. 26) will be DENIED WITHOUT PREJUDICE. Hunter's Motion for the Appointment of Counsel (ECF No. 27) will be DENIED WITHOUT PREJUDICE. The action will proceed on Claim One. Any party wishing to file a dispositive motion must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

Date: 26 August 2019
Richmond, Virginia

/s/ JC
John A. Gibney, Jr.
United States District Judge