IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CHARLES C. HUNTER,**

    Plaintiff,

v.                                            Civil Action No. **3:18CV153**

**DIRECTOR RAUF,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Charles C. Hunter, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Hunter's Particularized Complaint ("Complaint," ECF No. 18).[2] Hunter names as defendants: Director Rauf,[3] Supervisor Malike, and Supervisor Osafo. The matter is before the Court on the Motion for Summary Judgment filed by Supervisor Malike and Supervisor Osafo. (ECF No. 77.) Hunter has responded. (ECF No. 85.) For the reasons stated below, the Motion for Summary Judgment will be GRANTED.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Hunter's submissions.

[3] Defendant Director Rauf has not yet appeared in this action.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)

2

(quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit: (1) the affidavit of Lieutenant Michael Chapman, a custodian of records for Fairfax County Adult Detention Center ("FADC") ("Chapman Aff.," ECF No. 78–1.) Attached to Chapman's Affidavit is Hunter's Booking and Receiving Information from the FADC (*id.* Attach. A), the July 6, 2018 Special Observation Log (*id.* Attach. B), and Hunter's July 10, 2018 inmate request form (*id.* Attach. C). Additionally, Defendants submitted the affidavit of Susie Grant, the custodian of records for inmate medical records at the FADC ("Grant Aff.," ECF No. 78–2). Defendants attached to Grant's Affidavit, Hunter Medical Intake Health Appraisal (*id.* Attach. A), Hunter's Clinical Order (*id.* Attach. B), and Hunter's Medication Sheet and Administration Record for July 2018 (*id.* Attach. C). Further, Defendants submitted the affidavits of Samuel Osafo ("Osafo Aff.," ECF No. 78–3), Abdul Malike ("Malike Aff.," ECF No 78–4), and Second Lieutenant James Santmyers ("Santmyers Aff.," ECF No. 78–5). Hunter filed a one paragraph, unsworn response. (ECF No. 85.)

In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Hunter.

## II. UNDISPUTED FACTS

### A. Hunter's Medication

Hunter was re-incarcerated at the FADC on July 6, 2018, for a probation violation. (Chapman Aff. Attach. A 1.) At 12:30 p.m. on July 6, 2018, during his initial medical screening, Hunter told the medical staff that he suffered from a blood clot in his left leg and was prescribed

Xarelto. (Grant Aff. Attach. A 4.) Based on Hunter's medical screening, the FADC Medical Director, Dr. Lishan Kassa ("Dr. Kassa"), prescribed Hunter Coumadin. (*Id.* Attach. B 1.) Dr. Kassa also prescribed lab work to take place the following week. (*Id.*) Coumadin is a blood thinner used to treat blood clots. (Osafo Aff. ¶ 6.) Coumadin is the in-house blood thinner medication held within the FADC formulary. (*Id.*) FADC uses Coumadin and its generic, Warfarin, as the blood thinner medication for FADC inmates. (*Id.*) Coumadin is distributed to inmates only during the nighttime medication pass at 9:00 p.m. (*Id.* ¶¶ 5–7.)

On July 6, 2018, Hunter was moved from the intake portion of FADC to another section of the jail at approximately 2100 hours. (Chapman Aff. Attach. B 1.) During the nighttime medication pass on July 6, 2018, a medical staff member labeled Hunter's Medical Sheet & Administration Record ("MAR") that he had been "released." (Grant Aff. Attach. C 1.) Defendant Malike explains that "[a]t that time, if FADC nurses were to distribute medication to an inmate at his FADC housing location and the inmate was not there, and the paper records had not yet been updated to reflect a new housing location within the FADC, nurses would not immediately know where the inmate was located while they were passing out medication." (Malike Aff. ¶ 7.) On rare occasions,

> a nurse would mistake an inmate's absence from his old housing unit as an indication that the inmate was no longer housed in the FADC, and mistakenly write that the inmate had been "released." While infrequent, this mistake would occur with inmates initially housed in the intake section of the FADC, as inmates housed in the intake portion of the FADC were much more likely to be held in the FADC for brief periods of time. If an inmate was classified as "released," the inmate's MAR would be removed from the medication pass book and the inmate's medications would be discontinued. If an inmate did not have a MAR in the medication pass book, the inmate would not receive medication during medication distribution. When an error classifying an inmate as "released" was noticed, medical staff would immediately correct the mistake. The FADC has since switched to an Electronic Medical Records system as a way to avoid these classification errors.

(*Id.* ¶¶ 8–13 (paragraph numbers omitted).)

Because Hunter had been classified as "released" on July 6, Hunter did not receive his medication on that date and his Coumadin prescription was discontinued. (Grant Aff. Attach. C 1.) The next day, July 7, 2018, Hunter wrote an inmate request complaining that he had not received, Xarelto, his blood thinner medication. (*Id.* Attach. D 1.) On July 8, 2018, Hunter was re-prescribed Coumadin's generic form, Warfarin.[4] (Grant Aff. Attach B 1, C 2.)

On July 9, 2018, Hunter met with Defendant Osafo to discuss issues with his medication. (Santmyers Aff. Attach. A 1.) Defendant Osafo ordered that Hunter receive an extra blanket and indicated that he would consult with Dr. Kassa regarding Hunter's medication. (*Id.*) On July 10, 2018, Hunter was placed on the list to see the doctor on the next available date regarding Hunter's preference for Xarelto. (*Id.*; Osafo Aff. ¶ 10.) On July 10 and July 11, 2018, Hunter refused to take his prescription for Warfarin. (Santmyers Aff. Attach. A 1; Grant Aff. Attach. E 1.)

On July 12, 2018, Hunter was seen in the medical department where medical staff evaluated his leg and discussed his medications. (Grant Aff. Attach. F 1.) The intake nurse noted Hunter's leg was not swollen or red and was warm to the touch. (*Id.*) Nurse Practitioner ("NP") Wong documented Hunter's displeasure with Coumadin and his preference for Xarelto. (*Id.*) Nurse Practitioner Wong evaluated Hunter and noted, *inter alia*, that: Hunter's vitals were normal, Hunter did not have a headache or blurry vision; Hunter was able to walk to and from medical twice that day; Hunter's left leg did not have any swelling or redness; and Hunter's left leg had a mild decrease in range of motion and strength. (*Id.*) NP Wong discontinued Hunter's

---

[4] Xarelto is not within the FADC formulary and must be ordered from an outside pharmacy. (Osafo Aff. ¶ 8.) As Xarelto was a new prescription for Hunter with respect to his current detention in the FADC, it required the approval of a doctor or nurse practitioner. (*Id.* ¶ 9.)

prescription for Warfarin and stated Xarelto would be ordered for the following day. (*Id.*) Hunter agreed to take a single dose of Warfarin for the evening of July 12, 2018. (*Id.*) On July 12, 2018, Hunter took his single dose of Warfarin. (Grant Aff. Attach C 2.) From July 13, 2018, onward, Hunter was prescribed Xarelto and took his medication. (*Id.*)

### B. Facts Specific to Defendants Osafo and Malike

At all times relevant to this suit, Defendant Osafo served as a day-shift Registered Nurse Team Leader at FADC. (Osafo Aff. ¶¶ 2, 4.) Osafo was not at the FADC facility and was not aware that Hunter was incarcerated at FADC from July 6, 2018, through July 8, 2018. (*Id.* ¶ 3.) Defendant Osafo was on duty during the day shift at FADC on July 9 and July 10, 2019. (*Id.* ¶ 4.) The nighttime medication distribution occurred at 9:00 p.m., after the conclusion of the day shift.

At all times relevant to this suit Defendant Malike served as a day-shift Nursing Supervisor at FADC. (Malike Aff. ¶ 3.) Malike was on duty during the day shift at FADC on July 6 through July 8, 2018. (*Id.*) Defendant Malike was not at the FADC facility on July 9 and July 10, 2019. (*Id.* ¶ 4.) Defendant Malike had no knowledge of any problems with Hunter's blood thinner medication between July 6 and July 11, 2018, until after Hunter was prescribed and receiving Xarelto. (Malike Aff. ¶ 14.)

### III. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, a plaintiff must demonstrate: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to claims of inadequate medical treatment under the Eighth

Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167. A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Furthermore, where, as here, an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must allege facts that suggest "that the delay resulted in substantial harm." *Webb*, 281 F. App'x 166–67 & n.13 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted).

The subjective prong of an Eighth Amendment claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive

a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

Here, Hunter has failed to satisfy the objective and subjective prongs for Defendants Malike and Osafo. There was a delay of roughly a week before Hunter received his preferred blood thinner medication.[5] Hunter fails to demonstrate that this delay in the provision of his medication resulted in "lifelong handicap, permanent loss, or considerable pain." *Garrett*, 254 F.3d at 950 (citation omitted). Indeed, the record indicates that Hunter did not suffer any adverse effects from temporary interruption in his preferred medication. Hunter, therefore, fails to demonstrate that the delay in provision of his preferred medication was sufficiently serious as to satisfy the objective prong for an Eighth Amendment claim.

Furthermore, Hunter fails to demonstrate that either Defendant Malike or Osafo acted with deliberate indifference. Defendant Malike had no knowledge of Hunter's delay in receiving blood thinner medication between July 6 and July 11, 2018, until after Hunter was prescribed and

---

[5] The record reflects that blood thinner medication was available to Hunter within 48 hours of his incarceration. It was not, however, the medication Hunter preferred.

receiving Xarelto. (Malike Aff. ¶ 14.) On July 9, 2018, Defendant Osafo met with Hunter and discussed Hunter's desire to receive Xarelto rather than Warfarin. Hunter, however, fails to demonstrate that providing Warfarin rather than Xarelto provided a substantial risk of serious harm to his health.[6] Moreover, Defendant Osafo did not act with indifference to Hunter's desire to take Warfarin rather than Xarelto. Defendant Osafo promptly placed Hunter on the list to see the doctor about his desire to take Xarelto rather than Warfarin. *See Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001) (observing that "an official who responds reasonably to a known risk" does not act with deliberate indifference (citing *Farmer*, 511 U.S. at 837)).

Hunter's Eighth Amendment claims against Defendants Osafo and Malike will be DISMISSED. The Motion for Summary Judgment will be GRANTED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 22 June 2020
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

---

[6] Indeed, NP Wong briefly prescribed Warfarin for Hunter after meeting with him.